# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: September 9, 2014

Docket No. 31,890

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

RON BELL,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Neil C. Candelaria, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Bregman & Loman, P.C.
Sam Bregman
Albuquerque, NM

for Appellee

## OPINION

**HANISEE, Judge.**

**{1}** In its appellate capacity, the district court entered an opinion and order reversing a metropolitan court conviction for speeding, failure to maintain lane, and driving while impaired (first offense), on the basis that the metropolitan court should have excluded prosecution evidence that was admitted at trial in violation of the New Mexico Constitution. The State now appeals the district court order, arguing that Defendant failed to preserve the grounds relied upon by the district court for suppressing the evidence at issue and that the

1

challenged evidence was properly admitted during trial. Because we agree with the district court that the grounds it relied upon to reverse were sufficiently preserved in the metropolitan court and constituted reversible error, we affirm.

**Standard of Review**

**{2}** Because this is a criminal action "involving driving while under the influence of intoxicating liquors or drugs[,]" the metropolitan court acted as the trial court of record, and the district court acted in its appellate capacity when it reviewed the conviction. NMSA 1978, § 34-8A-6(C) (1993); Rule 1-073 NMRA; *see State v. Trujillo*, 1999-NMCA-003, ¶ 4, 126 N.M. 603, 973 P.2d 855 (stating that "[f]or on-record appeals the district court acts as a typical appellate court, with the district judge simply reviewing the record of the metropolitan court trial for legal error"). In subsequent appeals such as this, we apply the same standards of review employed by the district court. *See id.* ¶¶ 1, 5. A trial court's determination on a motion to suppress evidence involves a mixed question of law and fact, as to which our review is de novo. *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. Our scope of review, like that of the district court, is defined by Supreme Court rules that require that in order "[t]o preserve a question for review it must appear that a ruling or decision by the metropolitan court was fairly invoked[.]" Rule 1-073(O); *cf.* Rule 12-216(A) NMRA. The preservation rule is applied to advance its three primary purposes:

> (1) to specifically alert the [trial] court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the [trial] court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

*Gerke v. Romero*, 2010-NMCA-060, ¶ 18, 148 N.M. 367, 237 P.3d 111 (internal quotation marks and citation omitted).

**Proceedings Before the Metropolitan Court**

**{3}** The sole evidence relevant to the metropolitan court's ruling denying suppression was the trial testimony of Deputy Allen. The relevant portions of Deputy Allen's testimony described a sequence of events that began with Defendant's car passing Deputy Allen, who was driving northbound on Tramway Boulevard in Albuquerque, New Mexico. Deputy Allen then caught up with Defendant's car and determined, by reference to his own speedometer, that Defendant was driving at a speed of sixty miles per hour in an area with a posted speed limit of fifty miles per hour. At the intersection of Tramway and Spain Road, both cars stopped at a red light, but Defendant's car improperly stopped in the intersection crosswalk. When the light turned green, Defendant re-accelerated to sixty miles per hour, with Deputy Allen still following. The cars again stopped for a red light at the intersection of Tramway and Academy Road, and Defendant again accelerated to sixty miles per hour after the stop. Just north of Academy, Defendant crossed partially over the white line

dividing the roadway from the shoulder, so that "the middle of the vehicle was over the white line," and continued to drive partially on the shoulder until Deputy Allen pulled him over just past the intersection of Tramway and San Rafael Avenue. As he pulled Defendant over, Deputy Allen used his radio to ask dispatch whether a DWI unit was available because "[j]ust on the observation of the driving[, Deputy Allen] wasn't sure if that was what [he] was looking at or not."

**{4}** Deputy Allen approached Defendant, explained the basis for the stop, and asked Defendant for his driver's license, automobile registration, and proof of insurance. He noticed that Defendant's hands were shaky when he handed over those documents and that "it sounded like something wasn't correct; something didn't sound correct about his voice." Deputy Allen described Defendant as sounding as if he were speaking with a "thick tongue."

**{5}** Deputy Allen asked Defendant if he was "under the influence," and Defendant said "no." Deputy Allen then had Defendant put both of his hands on the car window frame and move his head closer to the car window in order to conduct a horizontal gaze nystagmus (HGN) test. It took four attempts by Deputy Allen to conclude that Defendant bore no sign of nystagmus, a delay Deputy Allen attributed to Defendant's non-compliance with instructions. Yet Deputy Allen agreed when cross-examined that performing an HGN test while the subject is seated in his car does not comply with standards promulgated by the National Highway Traffic Safety Administration.

**{6}** Deputy Allen next asked Defendant whether "he [had] any grenades, rocket launchers in the vehicle" and whether "he had any dead bodies in the car." In response to both of those questions, Defendant said "no" while shaking his head. Deputy Allen then asked whether Defendant "had any narcotics in the vehicle, prescription or otherwise," and Defendant answered "no," but this time simultaneously nodded his head in the affirmative. Deputy Allen then asked whether there were any prescriptions in Defendant's car and Defendant again said "no" while contradictorily nodding his head affirmatively. Deputy Allen testified that he did not, in fact, believe that Defendant had any grenades, rocket launchers, or dead bodies in his car, but that he asked those questions to determine "what type of response" he would get from Defendant and to help "decide if [Defendant was] being truthful." Afterward, evidence was uncovered leading to Defendant's arrest and ultimately his conviction in the metropolitan court.

**{7}** Following Deputy Allen's testimony, Defendant moved to suppress based upon "lack of reasonable suspicion to even conduct a further investigation along with the lack of reasonable suspicion based on the stop." The metropolitan court heard argument from both sides on those issues and ruled that the initial traffic stop was based upon reasonable suspicion. Defendant does not challenge that ruling on appeal. Defense counsel then asked the metropolitan court for a ruling regarding whether there was sufficient reasonable suspicion for "it to go from a [traffic] stop to conducting a DWI investigation." Following further argument, the metropolitan court denied Defendant's motion and ruled Deputy Allen's testimony to be admissible, specifically noting that Defendant was speeding, failed

3

to maintain his traffic lane, and that Deputy Allen had to "go over [the HGN] directions on three different occasions."

**Appeal on the Record to the District Court**

**{8}** Following a four-day bench trial in metropolitan court resulting in a conviction and the entry of a sentencing order, Defendant appealed to the district court arguing, *inter alia*, that "the metropolitan court erred in ruling independent reasonable suspicion arose outside of the scope of the initial . . . stop for traffic violations in violation of the Fourth Amendment of the United States Constitution and [Article II, Section 10] of the New Mexico Constitution[.]" The State's response asserted that Defendant relied solely upon the Fourth Amendment at trial and thus had not preserved any claim based upon the concededly broader protections afforded by Article II, Section 10 of the New Mexico Constitution, because that provision of the state constitution was never expressly referenced before the metropolitan court. The district court, *sua sponte*, ordered the parties to submit supplemental briefing on the question of "whether Defendant preserved his claim, under Article II, Section 10 of the New Mexico Constitution, as to whether or not Deputy Allen lacked reasonable suspicion to question Defendant regarding additional criminal activity thereby improperly expanding the scope of the traffic stop."

**{9}** As directed, the parties submitted briefs addressing the question of whether Defendant had asserted any protection existing under the state constitution at trial. In doing so, Defendant maintained that, although his argument at trial made no specific reference to any *provision* of the state constitution, he had argued an established *principle* protected uniquely by the New Mexico Constitution. The State's disagreement notwithstanding, the district court concluded that "Defendant preserved these issues for review." If Defendant was correct in his claim before the district court, the central question raised in this appeal was preserved for review both in that court and here.

**{10}** In then substantively analyzing Defendant's state constitutional argument, the district court further concluded that "Deputy Allen lacked reasonable suspicion to expand the scope of the investigation to inquire into weapons and dead bodies" and therefore that "Defendant's motion to suppress should have been granted [in the metropolitan court] as to any evidence obtained after that inquiry." The State appeals from the district court's ruling, reiterating its contentions that Defendant's state constitutional arguments were not raised and are therefore not preserved and that Article II, Section 10 was not violated by questions unrelated to the DWI investigation that did not expand the investigation's scope.

**Preservation of Defendant's Claims**

**{11}** The question of whether a claim under Article II, Section 10 is preserved in this case depends upon what grounds or principle Defendant asserted at trial for the suppression of evidence. Specifically, we must resolve whether Defendant's challenges that Deputy Allen lacked reasonable suspicion "to even conduct a further investigation" or "to go from a

4

[traffic] stop to conducting a DWI investigation" must be strictly understood to challenge only investigative steps undertaken with regard to DWI. If so constrained, the objections would fail to assert the broader, well established state constitutional principle that limits police inquiries of an individual suspected of having committed a vehicle infraction to questions reasonably related to the basis for the vehicle stop. If understood to challenge *any* progression of investigation beyond that needed in relation to the traffic infractions observed by Deputy Allen, the time-of-trial challenge by Defendant was sufficient to garner review of the propriety of questions about grenades, rocket launchers, and dead bodies, topics of criminality plainly afield of traffic infractions.

To this inquiry, New Mexico courts have long held that:

> [t]he purpose of an objection or motion is to invoke a ruling of the court upon a question or issue, and it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked.

*State v. Lopez*, 1973-NMSC-041, ¶ 23, 84 N.M. 805, 508 P.2d 1292; *see City of Portales v. Shiplett*, 1960-NMSC-095, ¶ 6, 67 N.M. 308, 355 P.2d 126 (holding that a defendant's failure "to point out the claimed errors and to bring them to the attention of the trial court prevent his relying on them for the first time on appeal"). *But see State v. Gomez*, 1997-NMSC-006, ¶¶ 24-25, 122 N.M. 777, 932 P.2d 1 (stating that the defendant "need not have asserted . . . that Article II, Section 10 should be interpreted differently from the Fourth Amendment" because there is "established New Mexico law interpreting Article II, Section 10 more expansively").

**{12}** Most recently, our Supreme Court has clarified that the less stringent of New Mexico jurisprudence's preservation requirements applies in this very context due to the "plethora of precedent already [establishing] Article II, Section 10['s] more expansiv[e protection than that afforded by] the Fourth Amendment."[1] *State v. Leyva*, 2011-NMSC-009, ¶ 50, 149 N.M. 435, 250 P.3d 861. Having reviewed the trial proceedings and *Leyva*, we disagree with the State that the issue before us was inadequately preserved for appellate review. We conclude that not only did Defendant assert that the facts known to Deputy Allen were insufficient to

---

[1]As clear as this controlling precedent now is, we question why it is any longer necessary that the simultaneously applicable protections of the Fourth Amendment and Article II, Section 10 must be independently preserved when challenging the constitutional legality of a vehicle stop in New Mexico. To require dual assertions of such persistently overlapping protections, known well to both attorneys and the judges in whose courts these issues are most frequently raised, unnecessarily risks the waiver of important protections to motorists' liberty. It is, however, for our Supreme Court to effectuate change to its own jurisprudence, and we review the district court's ruling under *Leyva* and cases preceding it.

justify prolonging the traffic stop for purposes of a DWI investigation, he broadly argued that there existed no "reasonable suspicion to even conduct a further investigation[.]" The principle asserted by Defendant was sufficient to question the propriety of Deputy Allen's questions about grenades, rocket launchers, and dead bodies. *See id.* ¶ 42 ("[O]nly where a state constitutional provision had never been interpreted to provide greater protection than its federal analog are parties required to alert the trial court [to the applicable constitutional provisions] and articulate reasons for departure.").[2] While we recognize that Defendant emphasized what he perceived to be the unfounded expansion of Deputy Allen's investigation into the realm of DWI, we construe *Leyva* to caution against overly technical resolutions to preservation challenges in areas of law where heightened state constitutional protections are entrenched in our jurisprudence. *See id*. ¶ 38 (upholding principles of preservation set forth in *Gomez* and noting that since its issuance "some opinions have strayed by imposing a higher standard"). One such well-rooted principle is the prohibition in New Mexico on police questioning that strays from the initial justification for a vehicle stop and that is not otherwise separately supported by reasonable suspicion. *Leyva*, 2011-NMSC-009, ¶ 55.

**{13}** Because we conclude that Defendant's challenge in the metropolitan court triggered protections pursuant to Article II, Section 10 of the New Mexico Constitution, and was asserted in the metropolitan court and therefore preserved, we need not address Defendant's remaining arguments related to this issue. We turn now to whether questions asked by Deputy Allen during his investigation impermissibly expanded the scope of the traffic stop contrary to the New Mexico Constitution.

**Propriety of Questions Regarding Rocket Launchers and Dead Bodies**

**{14}** It is well-rooted within New Mexico jurisprudence that our interstitial approach to state constitutional analysis entails review of parallel or analogous provisions of the United States Constitution to determine whether the federal protections are deficient to a degree requiring supplementation to protect the rights of New Mexico citizens. *Id.* ¶¶ 40-42. The rule is:

> "[w]here New Mexico courts have taken a different path than federal courts, our precedent governs regardless of whether a party cites specific cases in support of a constitutional principle, so long as the party asserted the

---

[2]Although unnecessary to our resolution of this issue, we note that our Supreme Court has also stated that even if the defendant "had failed to preserve the state constitutional claim, we could nevertheless consider it because freedom from illegal search and seizure is a fundamental right." *Gomez*, 1997-NMSC-006, ¶ 31 n.4. Also cited in the same footnote is *State v. Sutton*, 1991-NMCA-073, ¶ 20, 112 N.M. 449, 816 P.2d 518, which discusses search and seizure protections under the state constitution as a matter of general public interest that exists despite the defendant's failure to preserve the claim for appellate review. *See Gomez*, 1997-NMSC-006, ¶ 31 n.4.

principle recognized in the cases and has developed the facts adequately to give the opposing party an opportunity to respond and to give the court an opportunity to rule."

*Id.* ¶ 41 (quoting *Gomez*, 1997-NMSC-006, ¶ 30). *Leyva* also clarified that the "less stringent of *Gomez*'[s] preservation requirements[,]" namely the "asserti[on of] the constitutional principle" and a "showing [of] the factual basis needed for the [district] court to rule on the issue[,]" *Leyva*, 2011-NMSC-009, ¶¶ 40, 44, 50 (internal quotation marks and citation omitted), applies to issues such as that raised herein because " 'a plethora of precedent already interprets Article II, Section 10 more expansively than the Fourth Amendment.' " *Leyva*, 2011-NMSC-009, ¶ 50 (quoting *State v. Garcia*, 2009-NMSC-046, ¶ 52, 147 N.M. 134, 217 P.3d 1032 (Bosson, J., specially concurring).

**{15}** Further instructive to our analysis is *Leyva*'s reaffirmation of the state constitutional principle that Defendant maintains he invoked at trial, namely that Article II, Section 10 requires "a reasonable justification for the initial stop and that *all* questions asked during the stop be reasonably related to the reason for the stop or otherwise supported by reasonable suspicion[.]" *Leyva*, 2011-NMSC-009, ¶ 55 (emphasis added); *see State v. Duran*, 2005-NMSC-034, ¶ 35, 138 N.M. 414, 120 P.3d 836 (holding that "all questions asked by police officers during a traffic stop must be analyzed to ensure they are reasonably related to the initial justification for the stop or are supported by reasonable suspicion") *overruled in part and on other grounds by Leyva*, 2011-NMSC-009, ¶ 17. *Leyva* reminds us that Article II, Section 10 bestows upon drivers "broader protection to individual privacy under the New Mexico Constitution than under the Fourth Amendment." 2011-NMSC-009, ¶ 53 (internal quotation marks and citation omitted). As a result, the propriety of police conduct during a traffic stop is measured from the perspective of the state constitution by a standard distinct from that of the Fourth Amendment. Pursuant to modern Fourth Amendment jurisprudence, a traffic stop will be held valid so long as the officer does not prolong the stop "beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *Id.* ¶ 19 (internal quotation marks and citation omitted). Thus, for Fourth Amendment purposes, the proper inquiry is "[w]hether an officer's questioning measurably extends the length of a traffic stop." *Id.* ¶ 21; *see Ariz. v. Johnson*, 555 U.S. 323, 333 (2009) (noting that "inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop").

**{16}** For purposes of Article II, Section 10, however, our courts continue to adhere to the two-part test first articulated in *Terry v. Ohio*, that requires an officer's action be both "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. 1, 19-20 (1968). Thus, under Article II, Section 10, both the duration and scope of a stop must be reasonable under the circumstances and, unlike under the Fourth Amendment, even questions that do not prolong the encounter are improper if they are not "reasonably related to the reason for the stop or

otherwise supported by reasonable suspicion[.]" *Leyva*, 2011-NMSC-009, ¶ 55. This approach "ensures that investigating officers do not engage in 'fishing expeditions' during traffic stops." *Id.*

**{17}** Regarding the specific questions at issue, we note that the State has not asserted that the facts of the vehicle stop gave rise to any reasonable suspicion involving the disallowed possession of certain weapons or corpses. Had such a concern been argued by the State and determined to be valid, it would constitute a permissible expansion of the scope of the traffic stop. Contrary to such a finding, the district court determined that:

> Deputy Allen jumped from a traffic investigation to an impairment investigation to questions regarding weapons and dead bodies. . . . There were no articulable facts introduced suggesting the Deputy had reasonable suspicion to suspect Defendant was in possession of illegal weapons or corpses.
>
> . . . .
>
> Such questions, which expand the scope of the investigation, are not permitted in New Mexico, absent reasonable suspicion, irrespective of the Deputy's alleged intent to simply elicit truthful responses.

**{18}** On the record before it, the district court's analysis was correct. Indeed, when given the opportunity to explain or establish an investigative foundation for his non-traffic-related inquiries in a manner that related to his immediate investigation, Deputy Allen offered only two related justifications: that he needed help generally deciding whether Defendant was "being truthful," and in "trying to determine the truthfulness of a response." On appeal, the State similarly contends that "Deputy Allen did not ask the questions about weapons and dead bodies with the intent to investigate whether Defendant had such things. Rather, he asked the questions as an interview technique designed to help him gauge the truthfulness of Defendant's responses about DWI." However, nothing in the record indicates a preexisting awareness on the part of Deputy Allen as to whether grenades, dead bodies or rocket launchers were located within Defendant's vehicle such to where Deputy Allen could ascertain the honesty or dishonesty of Defendant's responses. Furthermore, there is no basis under *Leyva* for us to assume an alternatively appropriate reason existed for asking these unrelated, and what Deputy Allen conceded to be "outrageous" questions regarding items Defendant could not have lawfully possessed. *See id.* ¶ 55; *see also Duran*, 2005-NMSC-034, ¶ 35 (stating that "all questions asked by police officers during a traffic stop must be analyzed to ensure they are reasonably related to the initial justification . . . or are supported by reasonable suspicion" that may unfold during the investigation or traffic stop). There being no such legitimate investigative purpose asserted herein, no basis for Deputy Allen to accurately ascertain the truthfulness of the answers given by Defendant, and nothing in the record to otherwise place the questions in the context of what was properly being investigated, we hold that the district court correctly concluded that the questions were

8

constitutionally improper under *Leyva*.

**{19}** When a motorist is subjected to inquiries unsupported by reasonable suspicion during a vehicle stop, our precedent establishes that the continuing detention of that person is illegal. *State v. Portillo*, 2011-NMCA-079, ¶ 24, 150 N.M. 187, 258 P.3d 466. It is likewise settled law that evidence "discovered as a result of the exploitation of an illegal seizure must be suppressed unless it has been purged of its primary taint." *Id.* ¶ 25 (citing *Garcia*, 2009-NMSC-046, ¶¶ 14, 23, for its recitation of the "fruit of the poisonous tree doctrine" set forth in *Wong Sun v. United States*, 371 U.S. 471 (1963)). *See Leyva*, 2011-NMSC-09, ¶ 2 (stating that when an investigative officer's questions are not based upon reasonable suspicion, the proper remedy is to suppress "evidence gathered as a result of the questioning"); *see also id.* ¶ 10 (stating "[w]here evidence has been obtained as a result of questions not justified under the Fourth Amendment, suppression of that evidence is the proper remedy"). On appeal, the State's argument is limited to defending the propriety of the questions asked by Deputy Allen. The State does not argue that the evidence that led to Defendant's conviction did not result from the exploitation of his illegal detention, or maintain specifically that it derived from something other than the impermissible questions themselves. Nor did it challenge the district court's determination that Defendant's conviction must be reversed if the questions are determined to be constitutionally impermissible. We do not address issues or questions unraised by litigants. *See State v. Bent*, 2013-NMCA-108, ¶ 27, 328 P.3d 677 ([W]e disregard . . . issue[s] . . . not raised on appeal."

**{20}** Here, the entirety of Deputy Allen's testimony leading to Defendant's arrest was admitted into evidence during trial, including that regarding events that transpired after the improper questions were asked and during the illegal detention. As Deputy Allen's testimony constituted the sole basis for the metropolitan court's determination of Defendant's guilt, Defendant's conviction must be reversed.

**CONCLUSION**

**{21}** The order of the district court is affirmed.

**{22}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**I CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

9

**JONATHAN B. SUTIN, Judge (specially concurring).**

**SUTIN, Judge (specially concurring).**

**{23}** I concur but add the following thoughts.

**{24}** The Opinion's analysis of whether Defendant properly invoked the state constitution indirectly permits a result without having to outright reject present preservation jurisprudence. It is too bad that we must resort to this indirect approach to reach a just result. I fully agree with what the Opinion states in its footnote 2. It is time to hold that in search and seizure cases our courts will automatically examine whether relief under Article II, Section 10 of the New Mexico Constitution should be available whenever it appears that relief is unavailable under the Fourth Amendment.

**{25}** Insofar as the questioning about grenades, rocket launchers, and dead bodies is concerned, no one, neither Deputy Allen or Defendant, nor the metropolitan court, thought that the questioning was intended to relate to whether Defendant may have had such unlawful items in his vehicle. Furthermore, the officer testified that he had learned the questioning technique in "interviews and interrogation school" and that he had used similar types of questions in other traffic stop DWI investigations. Assuming, without deciding, that questioning to ascertain truthfulness in DWI (alcohol or drugs) investigations might under some particular circumstance be a legitimate investigatory process, the failure here was Deputy Allen's complete failure to lay an adequate foundation in that regard.

**{26}** Again, assuming, without deciding whether questions related to telling the truth in a DWI investigation might be legitimate and not constitute an unlawful expansion of the investigation, it appears to me that an officer would have to show a court that the questioning was grounded in a particular skill, knowledge, experience, education, and perhaps even science, and that the questioning was likely to give an indication of truthfulness that would assist the officer in his or her investigation.

_____
**JONATHAN B. SUTIN, Judge**

10