This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CITY OF AZTEC,**

Plaintiff-Appellee,

v.                                                            **NO. A-1-CA-35102**

**ANDREW BALDONADO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Larry T. Thrower, Aztec City Attorney
Farmington, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1} Based solely on information set forth in an anonymous tip, a City of Aztec (the City) police officer performed a vehicle stop, which led to Defendant being convicted of driving while intoxicated (DWI) and negligent use of a deadly weapon, the latter offense premised upon possession of a weapon while DWI. We reverse Defendant's convictions, holding that in order for a stand-alone, anonymous tip to supply the threshold degree of reasonable suspicion necessary to constitutionally justify a vehicle stop, it must at minimum set forth information that, if accurate, constitutes a crime under New Mexico law. We also reiterate that reasonable suspicion must exist when an officer engages his emergency lights to initiate a vehicle stop, and cannot arise afterward as a cumulative product of preceding and ensuing events.

**BACKGROUND**

{2} The essential facts underpinning the questions of law presented in this appeal are succinct and undisputed. During the evening of March 25, 2014, a City dispatch officer alerted a police officer that a telephonic complaint had been received that "a gray Ford Mustang [was] doing donuts" in a dirt lot north of a Conoco gas station located at an intersection. The tip contained no additional information. The police officer soon thereafter spotted a gray Mustang traveling nearby. Although the officer stated that the Mustang "accelerated rapidly," an action the officer described to be "aggressive," he testified that he observed no violation of any traffic law. The officer

nonetheless pulled over the Mustang because he believed it to be the subject of the telephonic complaint. After the officer engaged his emergency lights but prior to the Mustang stopping, the Mustang "jerked to the right . . . and hit a curb" adjacent to an apartment complex, into which Defendant turned and stopped the Mustang. Defendant was identified as the driver of the Mustang. It was determined that Defendant was intoxicated; thereafter he was arrested and found to possess a firearm contained within the Mustang.

**DISCUSSION**

{3}     Although Defendant challenges several aspects of his trial and convictions, the threshold issue presented in this appeal—whether the vehicle stop was supported by reasonable suspicion and therefore constitutionally permissible—is dispositive if answered in the negative. *See State v. Garcia*, 2009-NMSC-046, ¶ 47, 147 N.M. 134, 217 P.3d 1032 (applying Article II, Section 10 of the New Mexico Constitution to suppress evidence flowing from an illegal seizure). We have long held that when a vehicle is stopped for a reason lacking reasonable suspicion of criminal activity associated with the vehicle or its occupants, i.e., unconstitutionally, evidence discovered afterward is inadmissible. *See State v. Bell*, 2015-NMCA-028, ¶ 19, 345 P.3d 342 ("It is . . . [well] settled law that evidence discovered as the result of the

exploitation of an illegal seizure must be suppressed unless it has been purged of its primary taint." (internal quotation marks and citation omitted)).

**{4}** "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "The police may make an investigatory stop in circumstances that do not rise to probable cause for an arrest if they have a reasonable suspicion that the law has been or is being violated. . . . Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. "[R]easonable suspicion is a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 (alteration, internal quotation marks, and citations omitted). "We will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). In other words, "[i]nvestigatory detention is permissible when there is a

reasonable and articulable suspicion that the law is being or has been broken." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted).

**A.      The Vehicle Stop at Issue Was Not Supported by Reasonable Suspicion**

{5}      We begin by examining the two statutes and one city ordinance relied upon by the City to support the proposition that the police officer had reasonable suspicion to believe were violated based upon information contained within the telephonic complaint and upon which the stop was based. If one of the laws the City identifies was violated by the driving behavior described by telephonic complainant, then the police officer had reasonable suspicion and the vehicle stop was justified.[1]

{6}      First, the City points to NMSA 1978, Section 66-8-113(A) (1987), which prohibits reckless driving not generally, but "in a manner so as to endanger . . . any person or property." Yet on the record before us, nothing about the tip conveyed any potential hazard to persons or any identified item of property. To this end, in our general calendar notice to the parties, we instructed each to address "what the evidence indicated about the character and occupancy of the parking lot were Defendant was seen doing donuts[.]" Candidly, the City stated in its answer brief that,

---

[1]We note that the Aztec City Code adopts the New Mexico State Traffic Code, to which we refer when addressing the moving violations the City refers. *See* City of Aztec, N.M., ch. 24, art. II, § 24-21 (2007).

5

other than the tip having described a parking lot, for which a location was given and in which a "gray Ford mustang was doing 'donuts[,]' . . . [t]here was no additional evidence as to [the parking lot's] character and occupancy." The absence of some hazard to any known person or item of property is also fatal to the City's position pursuant to the standard jury instruction for reckless driving, which follows the statute in establishing as an essential element of "reckless driving" as the "endanger[ment of] any person or property[.]" UJI 14-4504(2) NMRA. Stated simply, under the known facts the district court could not have relied on Section 66-8-113(A) in denying Defendant's motion to suppress because there was no evidence that the officer was aware of any information that any person or property was endangered by the driving behavior described by the telephonic complaint. Absent any such fact, the stopping officer lacked reasonable suspicion that Defendant violated Section 66-8-113(A). *Cf. State v. Munoz*, 2014-NMCA-101, ¶ 13, 336 P.3d 424 (upholding a conviction for reckless driving based upon the defendant having exceeded the speed limit by nineteen to twenty-four miles per hour while passing vehicles traveling in the same direction).

{7}     For similar reasons, the second and third statutes the City points to are equally unavailing from the standpoint of supplying a basis for the officer to conclude Defendant had operated his Mustang in a manner that violated a law. *See* NMSA

6

1978, Section 66-8-114(A) (1978), which prohibits careless driving, limits its own application to driving that takes place "on the highway." *See also* UJI 14-4505(1) NMRA (establishing as an essential element of the offense of careless driving that the driving at issue take place "on a highway"). We have already held that a parking lot is not a highway for purposes of the careless driving statute. *See State v. Brennan*, 1998-NMCA-176, ¶ 7, 126 N.M. 389, 970 P.2d 161. Here, it is not disputed that the telephonic complaint the stopping officer was privy to stated only that the donuts were performed by a Mustang in a parking lot, and not on a highway. Consequently, under the applicable ordinance and our jurisprudence, reasonable suspicion could not have existed regarding the crime of careless driving. Likewise, the City's ordinance prohibiting disturbing the peace, like its statutory equivalent, NMSA 1978, Section 30-20-1(A) (1967), premises a violation upon the occurrence of an act of violence or one likely to produce an act of violence, neither of which is present or suggested by the tip in this case. *See* City of Aztec, N.M., ch. 12, art. IV, § 12-123 (2007);[2] *see also State v. Salas*, 1999-NMCA-099, ¶ 12, 127 N.M. 686, 986 P.2d 482 (defining the conduct required for conviction under Section 30-20-1(A) as "violent, abusive,

---

[2]Section 12-123 of the City of Aztec ordinance is not identical in all respects to the Section 30-20-1(A), the equivalent statutory provision that criminalizes disturbing the peace, but differs in no respect that matters to our analysis herein. Specifically, both require some sort of violence or other disorderly conduct that is not present in the facts of this case.

indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace" (internal quotation marks and citation omitted)). Thus, as defined by the words prohibiting disturbances of the peace, the telephonic complaint provided no basis to reasonably suspect that Defendant had violated the city ordinance.

{8}     Because none of the three laws the City suggests its officer had reasonable suspicion to believe to have been violated by Defendant could in fact have been based upon the information contained within the telephonic complaint—relayed to and relied upon by the officer when he stopped Defendant's Mustang—, we conclude that reasonable suspicion to conclude Defendant was breaking or had broken any law was absent. We next briefly address what meaning, if any, to legally ascribe to the fact that, after the officer engaged his emergency lights but before pulling over, Defendant drove the Mustang into a curb.

**B.      Reasonable Suspicion Justifying a Vehicle Stop Cannot Arise Following the Commencement of the Vehicle Stop**

{9}     "[I]t is a basic tenet of search and seizure law that a traffic stop must be reasonable and justified *at its inception*." *State v. Ochoa*, 2009-NMCA-002, ¶ 36, 146 N.M. 32, 206 P.3d 143 (emphasis added). "*Before* a police officer makes a stop, he must have a reasonable suspicion of illegal activity." *Hubble*, 2009-NMSC-014, ¶ 7 (emphasis added). Here, Defendant argues—and the City does not contest—that

Defendant's "reaction to the police officer's emergency lights, abruptly pulling to the right and hitting the curb, cannot be used in the calculation of reasonable suspicion to stop him." We agree. *See Garcia*, 2009-NMSC-046, ¶ 32 (holding that Fourth Amendment protections apply the moment the defendant is seized, and is not dependent upon the defendant's reaction to the officer's assertion of authority).

**CONCLUSION**

{10}     Based on the foregoing, the district court erred in denying Defendant's motion to suppress. Because we determine that the vehicle stop was not justified at its inception, we need not reach Defendant's remaining issues raised on appeal that relate to the reliability of the telephonic complaint or Defendant's prosecution for the firearm found in his vehicle during the ensuing DWI investigation, which must be suppressed pursuant to our ruling today. *See Bell*, 2015-NMCA-028, ¶ 19 (requiring exclusion of evidence discovered as a product of an illegal seizure in most circumstances).

{11}     **IT IS SO ORDERED.**


                             _____

                             **J. MILES HANISEE, Judge**

**WE CONCUR:**


_____

9

**M. MONICA ZAMORA, Judge**

_____
**JULIE J. VARGAS, Judge**