This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                **No. A-1-CA-35130**

**CARNELIAN ALLEN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

**{1}** Defendant Carnelian Allen entered into a conditional plea agreement, pleading guilty to possession of a controlled substance (methamphetamine), contrary to NMSA 1978, Section 30-31-23(E) (2011). Defendant's conditional plea agreement included the specific reservation of right to appeal the district court's order denying his motion to suppress evidence obtained during the search of his person prompted by the police responding to a suspicious person report. We affirm.

**BACKGROUND**

**{2}** At approximately 1:16 a.m. on April 12, 2015, Officer Carlos Martinez (Officer Martinez) of the Farmington Police Department responded to a dispatch call concerning a suspicious male reported to be hiding behind a wooden pallet next to a closed business. Upon arriving at the scene, Officer Martinez was directed to Defendant's whereabouts by another individual shining a flashlight at the wooden pallet Defendant was crouched behind. After locating Defendant, Officer Martinez ordered him out from behind the wooden pallet and directed him to sit on a set of stairs. Defendant complied with this order, and emerged holding only a plastic juice pouch. Officer Martinez testified that at this point, he was investigating a suspicious person report in addition to a potential violation of a county loitering ordinance.

**{3}** Officer Martinez questioned Defendant about his presence outside the building and where he was headed. Defendant explained that he was trying to get out of the

2

cold. He further explained that earlier in the day a Sheriff's deputy took him to a hotel to arrange a room for him, but he had since walked away and got lost. During this questioning, Officer Martinez observed that Defendant was fidgeting with the plastic juice pouch he was holding, he was stammering in his speech, bouncing his legs up and down, and repeatedly looking to the left and right.

{4}     Defendant's behavior led Officer Martinez to suspect Defendant might be under the influence of drugs or alcohol. He asked Defendant if he had been drinking or doing drugs; Defendant responded in the negative to each question. Officer Martinez then asked Defendant if he could search him for drugs, and Defendant consented to being searched. Upon searching Defendant's person, Officer Martinez found a cigarette box with methamphetamine in Defendant's pocket.

{5}     Defendant was charged with possession of a controlled substance (methamphetamine), contrary to Section 30-31-23(E), and possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001). He moved to suppress all evidence obtained in violation of the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. He relied primarily on *State v. Bell*, 2015-NMCA-028, 345 P.3d 342, to argue that the scope of the stop exceeded constitutional bounds. In response, the State argued that under New Mexico law, Officer Martinez properly questioned Defendant and his

suspicions only grew over the duration of the stop. The State also argued that prior to Officer Martinez's suspicions being alleviated, Defendant consented to being searched.

**{6}** Following an evidentiary hearing on the motion to suppress, the district court concluded that Defendant was under a lawful seizure while Officer Martinez investigated the suspicious person report and that during questioning, Defendant's behavior and explanation as to why he was in the area gave Officer Martinez reasonable suspicion to expand the scope of the encounter to include questioning Defendant about drug and alcohol use. The district court further concluded that Defendant lawfully consented to be searched, which resulted in Officer Martinez locating the methamphetamine on Defendant's person. The district court subsequently denied Defendant's motion to suppress.

**{7}** Thereafter, Defendant entered into a conditional plea agreement, pleading guilty to possession of a controlled substance (methamphetamine), a fourth degree felony explicitly reserving the right to appeal the district court's denial of his motion to suppress. This appeal followed.

**{8}** On appeal, Defendant argues that pursuant to Article II Section 10 of the New Mexico Constitution, the district court erred in denying his motion to suppress because Officer Martinez lacked reasonable suspicion to expand a suspicious person

4

investigation into a drug investigation. Subsumed into this argument is Defendant's contention that his consent to be searched was tainted by Officer Martinez's improper expansion of the stop. In response, the State argues that Officer Martinez's questions were reasonably related to the initial reason for the stop and to observations he made during the stop. The State further contends that his questions were supported by reasonable suspicion and therefore lawful.

**STANDARD OF REVIEW**

{9}     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). We review "factual matters with deference to the district court's findings if substantial evidence exists to support them, and [the Court] reviews the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). We do not reweigh the evidence, and we may not substitute our judgment for that of the fact-finder, as long as there is sufficient evidence to support the fact-finder's conclusion. *See State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156. The question for us on appeal is whether the

district court's "decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

**DISCUSSION**

{10}	Article II, Section 10 of the New Mexico Constitution provides that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures[.]" The New Mexico Constitution provides individuals with broader protection to privacy than does the Fourth Amendment of the United States Constitution. *See State v. Leyva*, 2011-NMSC-009, ¶ 53, 149 N.M. 435, 250 P.3d 861. Under our interstitial approach, we are not confined by the Fourth Amendment of the United States Constitution law in determining whether the defendant's rights were violated under the New Mexico Constitution. *See id.* ¶ 51. Thus, because "Article II, Section 10 is calibrated slightly differently than the Fourth Amendment[, i]t is a foundation of both personal privacy and the integrity of the criminal justice system, as well as the ultimate regulator of police conduct." *Id.* ¶ 53 (internal quotation marks and citation omitted).

{11}	In analyzing the constitutionality of police questioning during stops, pursuant to Article II, Section 10 of the New Mexico Constitution, New Mexico courts employ the two-part test first articulated in *State v. Duran*, 2005-NMSC-034, ¶ 23, 138 N.M.

414, 120 P.3d 836, *overruled in part by Leyva*, 2011-NMSC-009. The two-part test looks at "(1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Leyva*, 2011-NMSC-009, ¶ 10 (internal quotation marks and citation omitted). This framework requires "a reasonable justification for the initial stop and that all questions asked during the stop be reasonably related to the reason for the stop or otherwise supported by reasonable suspicion." *Id.* ¶ 55. Questioning unrelated to the initial purpose of the stop is proper only if it is otherwise supported by reasonable suspicion, for officer safety, or if the interaction between the officer and the individual has become consensual. *See id.*

{12}     As we noted earlier, Defendant's argument focuses only on the expansion of Officer Martinez's initial investigation. He does not contest the validity or purpose of Officer Martinez's initial stop itself—investigation of a suspicious person claim and a possible violation of the county loitering ordinance. Officer Martinez's questions about drug use or possession were reasonably related in scope to the suspicious person investigation because of his observations of Defendant's odd behavior and explanation for being behind a closed business in the middle of the night raised even more questions into who Defendant was and why he was there. Because both prongs of the

*Duran* test have been satisfied and neither are being challenged, we therefore focus our attention on whether the expansion of the stop was justified.

**{13}**     In determining whether an officer had proper grounds to expand an investigation beyond the initial purpose of the stop, the officer "must have reasonable and articulable suspicion that other criminal activity has been or may be afoot." *Leyva*, 2011-NMSC-009, ¶ 59 (internal quotation marks and citation omitted). We measure reasonable suspicion on an objective standard based on the totality of the circumstances. *See id.* "[R]easonable suspicion is a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 (alteration, internal quotation marks, and citation omitted). "[The] Court defers to the training and experience of the officer when determining whether particularized and objective indicia of criminal activity existed." *State v. Olson*, 2012-NMSC-035, ¶ 13, 285 P.3d 1066 (internal quotation marks and citation omitted); *Leyva*, 2011-NMSC-009, ¶ 10. Our Supreme Court has also noted that "[u]nrelated questions may also be posed where the stop has ended and a consensual encounter has developed." *Leyva*, 2011-NMSC-009, ¶ 10.

**{14}**     The State argues that the facts in this case mirror those in *Duran*. Defendant argues that the circumstances surrounding his case do not resemble those in *Duran*,

8

as the State suggests. He argues that unlike the defendant in *Duran* who exhibited suspicious behavior by way of inconsistent answers and nervousness, Defendant's own behavior was instead consistent with a homeless man merely searching for a warm place to sleep.[1] Therefore, unlike the officer in *Duran* who possessed reasonable suspicion, Defendant argues that Officer Martinez lacked such reasonable suspicion here. We disagree.

{15}    Additionally, Defendant relies on *Bell*, in support of his argument that Officer Martinez's questions were "well outside the scope of the initial stop." However, *Bell* is distinguishable from these facts. In *Bell*, the officer conducted a traffic stop based on a speeding vehicle. *See* 2015-NMCA-028, ¶ 3. After explaining the basis of the stop to the defendant, whose hands were shaking, the officer then proceeded to ask if he had any grenades, rocket launchers, or dead bodies in the vehicle. *See id.* ¶¶ 4-6. This Court reasoned that this line of questioning was an impermissible expansion of the scope of the traffic stop. *Id.* ¶ 17. As we explain below, unlike the officer in *Bell*, Officer Martinez's questions were an appropriate expansion of the initial investigation. Therefore, the scope of the stop did not exceed constitutional bounds.

---

[1]Defendant failed to provide a record proper citation in support of this characterization. We remind appellate counsel it is their responsibility to do so, as we will not undertake that responsibility for them. *See* Rule 12-318(A)(3) NMRA (declaring that a summary of the facts relevant to an appellate issue shall contain citations to the record proper).

**{16}** Our review of Officer Martinez's testimony, along with the video of his lapel camera, supports the district court's conclusion that Officer Martinez had reasonable suspicion to expand the stop and inquire into whether Defendant possessed drugs. *See State v. Martinez*, 2015-NMCA-051, ¶ 15, 348 P.3d 1022 (determining that an appellate court's review of a video is similar to reviewing any other documentary evidence, and the appellate court is in as good a position as the trial court to interpret the contents of the video), *rev'd on other grounds by* 2018-NMSC-007, 410 P.3d 186. While communicating with Officer Martinez, Defendant was fidgeting with a seemingly empty juice pouch, his eyes were quickly moving back and forth, his legs were continuously bouncing up and down, and his speech was stammering. This behavior caused Officer Martinez to suspect Defendant was under the influence of drugs or alcohol. Most notable was Defendant's implausible explanation about his presence outside a closed business at 1:00 a.m.—that earlier in the day a different law enforcement officer transported him to an unknown hotel to make arrangements for him, but he walked away before the arrangements were made and then he got lost.

**{17}** In considering the totality of the circumstances, Defendant provided a most unusual explanation that created more questions than it did provide answers. Like *Duran*, these circumstances were sufficient to provide Officer Martinez with reasonable suspicion that other criminal activity, namely public intoxication, drug use,

or drug possession, had been or may be afoot. Therefore, Officer Martinez was justified in expanding the initial scope of his investigation.

{18}    We conclude that Defendant was under a lawful seizure while Officer Martinez conducted his suspicious person investigation and that during this investigation Defendant's behavior and explanations gave Officer Martinez reasonable suspicion to expand the scope of the investigation. Because we conclude that Officer Martinez lawfully expanded the stop, we likewise conclude that Defendant's consent was not tainted by such a lawful expansion.

**CONCLUSION**

{19}    For the aforementioned reasons, we affirm the district court's denial of Defendant's motion to suppress.

{20}    **IT IS SO ORDERED.**


_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____

**JULIE J. VARGAS, Judge**


_____

**STEPHEN G. FRENCH, Judge**