This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**No. S-1-SC-37528**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**JERRY KENNEDY, JR.,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Briana Zamora, District Judge**

Dane Eric Hannum
Albuquerque, NM

for Petitioner

Hector H. Balderas, Attorney General
Meryl Elizabeth Francolini, Assistant Attorney General
Santa Fe, NM

for Respondent

## DECISION

**VIGIL, Chief Justice.**

**{1}** A jury in metropolitan court found Defendant guilty of driving while intoxicated (DWI), speeding, and resisting arrest. Under the applicable law at the time, Defendant appealed to the district court, which affirmed.[1] NMSA 1978, § 34-8A-6(C) (1993, amended 2019) (providing that a person aggrieved by a judgment of the metropolitan court in an action involving driving while intoxicated may appeal to the district court); *see State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342 (stating that in cases involving

---

[1]Effective June 14, 2019, appeals from the metropolitan court in cases involving driving while intoxicated go directly to the Court of Appeals. NMSA 1978, § 34-8A-6(D) (2019).

driving while intoxicated, the metropolitan court acts as the trial court and the district court acts in its appellate capacity).

**{2}** Defendant then appealed to the Court of Appeals, raising two issues: (1) whether the prosecutor's comments during closing argument violated his constitutional privilege against self-incrimination and right to due process, and (2) whether the metropolitan court erred in denying Defendant's motion for a mistrial on that basis. *State v. Kennedy*, A-1-CA-36091, mem. op. ¶ 1 (N.M. Ct. App. Jan. 17, 2019) (non-precedential), *cert. granted*, 2019-NMCERT-004 (S-1-SC-37528, Apr. 12, 2019). The Court of Appeals affirmed. *Id.* ¶¶ 26-27.

**{3}** We granted certiorari to determine if the Court of Appeals erred in its holding that the prosecutor's closing argument comments did not deprive Defendant of a fair trial. We affirm.

## I. BACKGROUND

**{4}** At the trial in metropolitan court, defense counsel told the jury in his opening statement that although Defendant had consumed two beers earlier in the day of his arrest, "there will be no evidence that he was intoxicated or impaired to any degree when he was driving." Defense counsel added that it was only *after* driving and parking his vehicle that Defendant went to the house of his friend, James Chavez (Chavez), to "pay him some money and he consumes some alcohol there." However, defense counsel did not stop there. Defense counsel added that when Defendant was asked about drinking by Officer Charles W. Miller (Miller), "[h]e said yes, he had earlier, but he didn't tell [Miller] about what he'd just consumed at . . . Chavez's house because he wasn't driving at that time."

**{5}** In this context, the following evidence was then presented. As Miller drove southbound, he noticed two southbound vehicles speeding. One was a blue Ford truck (Ford truck) and the other, following close behind the Ford truck, was a black Honda sedan (Honda). Miller pulled over the rear-most vehicle, the Honda. The Honda stopped, and the Ford truck kept going. During the traffic stop, Miller suspected the driver of the Honda, Jessica Villalobos (Villalobos), to be intoxicated. While administering field sobriety tests to Villalobos, Miller saw the Ford truck drive by his location and park down the street. While still talking to Villalobos, Miller watched the driver of the Ford truck exit the vehicle and go "to the right real quick and then across the street to the left."

**{6}** About ten minutes after the Ford truck parked, Defendant walked down the street and approached Miller. As Defendant approached Miller, he inquired about posting bond for Villalobos. Defendant confirmed he was the driver of the Ford truck and that he was the person Villalobos had been following. In speaking with Defendant, Miller observed that Defendant's eyes were bloodshot, his speech "dragged, if not slurred," and that a strong odor of alcohol was coming from him. Miller asked Defendant if he had been drinking, and Defendant answered that he had "a couple of beers" around lunchtime.

**{7}**     Suspecting Defendant of drinking and driving, Miller called for backup and had Defendant perform field sobriety tests. Following Defendant's poor performance on the field sobriety tests, Miller told Defendant to turn around and put his hands behind his back. Defendant pulled away, yelled "[o]h shit," and bolted across the street. As Defendant was running away, he stumbled over a curb and landed in a lawn. Miller caught, physically restrained, and handcuffed Defendant. Subsequently, Miller administered a breath alcohol test to Defendant and the results were .14 and .13.

**{8}**     In support of the defense raised in defense counsel's opening statement, Chavez testified that after Defendant parked the Ford truck, Defendant went to Chavez's house, stayed for fifteen to twenty minutes, and consumed "a couple shots" and a beer. Defendant did not testify.

**{9}**     In his closing arguments, the prosecutor remarked:

> [Defendant] didn't tell Officer Miller on December 8 of 2014 that he had just had a large amount of alcohol to drink. And if you're being investigated for DWI, I think it's a fact that might've come up at that time. When [Defendant] was being placed under arrest, that would've been a very good time to say "Whoa, wait, no let me explain. I was driving, but I drank after the fact." Instead he—

At that point, defense counsel objected and moved for a mistrial. In an exchange at a bench conference, defense counsel argued that the prosecutor was commenting on Defendant's right to remain silent. The prosecutor responded, "I do believe [defense counsel] has opened the door directly to this line of argument." The metropolitan court stated that it was not ready to declare a mistrial. After the defense completed its closing argument, the prosecutor argued in rebuttal:

> If you truly believe that [Defendant] drove to his friend's house, consumed several shots of Jack Daniels and a beer, then approached Officer Miller, and at no point in time during the investigation thought to tell Officer Miller that he had drank after he had driven, you should find him not guilty. However, I don't think with all the facts in front of us that that creates a reasonable doubt.

The defense made no objection to this argument.

## II.     DISCUSSION

**{10}**     Defendant argues that the prosecutor's closing and rebuttal arguments deprived him of a fair trial. In answering this question, we consider three factors as "useful guides": (1) whether the prosecutor's statements invaded some distinct constitutional protection, (2) whether the statements were isolated and brief, or repeated and pervasive, and (3) whether the statements were invited by the defense. *State v. Sosa*, 2009-NMSC-056, ¶¶ 26, 34, 147 N.M. 351, 223 P.3d 348.

**{11}** Defendant in turn argues that the prosecutor's arguments were a comment on his constitutional right to remain silent, they were not isolated and brief, and they were not invited. Defendant contends that his "presentation of a drank-after-driving affirmative defense . . . does not give the State *carte blanche* to trample his constitutional rights to silence and due process."

**{12}** Conversely, the State argues that the comments did not violate Defendant's right to remain silent because the comments concerned the period following his arrest, but before he received his *Miranda* warnings. The State further asserts that the comments were isolated and brief because they were not the focus or theme of the prosecutor's arguments, and they were relatively brief in duration. Finally, the State contends the comments were invited because defense counsel, in his opening statement, informed the jury that when Miller asked Defendant if he had been drinking, "[h]e said yes, he had earlier, but he didn't tell him about what he'd just consumed at . . . Chavez's house because he wasn't driving at that time." The State also suggests this statement was a reference to a fact not in evidence.

**{13}** The Court of Appeals concluded that the prosecutor's comments invaded a distinct constitutional protection because the broad references to "December 8" and "during [the] investigation" were sufficient to encompass post-*Miranda* silence. *Kennedy*, No. A-1-CA-36091, mem. op. ¶ 21 (alteration in original). However, the Court of Appeals did not reverse for two reasons. First, the Court determined that the comments were isolated and brief because they "constituted a relatively brief portion of the State's roughly eleven-minute initial closing argument and five-minute rebuttal." *Id.* ¶ 24. Second, the court concluded, the comments were invited because defense counsel repeatedly asked Miller on cross-examination whether he questioned Defendant about consuming alcohol after parking his vehicle, "strongly suggested that there was an account that Defendant had not relayed to the officer[.]" *Id.* ¶ 25. The Court of Appeals determined this line of questioning "practically invited the State to comment upon the account not provided at that time by Defendant." *Id.* The Court of Appeals therefore held that although the prosecutor's comments did invade a distinct constitutional protection, the comments were isolated, brief, and invited by the defense, weighing against reversal of Defendant's convictions. *Id.* ¶¶ 21-25.

**{14}** We agree with the Court of Appeals that the prosecutor's comments invaded Defendant's constitutional right to remain silent. The prosecutor's statements were sufficient to encompass both pre-arrest and post-arrest silence, and while the record does not indicate whether Defendant was given *Miranda* warnings, if "such an inference will benefit a defendant, we presume that the warning was given." *State v. DeGraff*, 2006-NMSC-011, ¶ 18, 139 N.M. 211, 31 P.3d 61.

**{15}** We also agree with the Court of Appeals that the prosecutor's comments were isolated and brief. The comments constituted a brief portion of the State's closing and rebuttal arguments, they were not the focus or theme of the prosecutor's argument, and when defense counsel objected to the comment in closing, discussion about the comment took place at the bench rather than in open court. *See State v. Sena*, 2020-NMSC-011, ¶ 20, 470 P.3d 227 (holding that when the jury hears the court overrule an

objection to improper argument, the "stamp of judicial approval" is placed on the improper argument, magnifying the prejudice).

**{16}** Finally, while we agree with the Court of Appeals' conclusion that the comments were invited by the defense, we disagree with its analysis and application of the "invited-response doctrine." We conclude that the prosecutor's comments were invited for a different reason, which we discuss below. Because the statements made by the prosecutor in closing and rebuttal arguments were fair comments on Defendant's failure to testify when Defendant did not testify as represented by defense counsel in his opening statement, we affirm.

## A.    Standard of review

**{17}** Ordinarily we review the "denial of a motion for mistrial under an abuse of discretion standard." *Sena*, 2020-NMSC-011, ¶ 15. However, Defendant's arguments rely on his rights to silence and to due process under both the New Mexico and United States Constitutions, and we review questions of constitutional law de novo. *Id.*

## B.    Analysis

**{18}** Because we agree with the Court of Appeals analysis of the first two *Sena* factors, we limit our analysis to the third: whether the State's arguments were invited by the defense. *See Sosa*, 2009-NMSC-056, ¶¶ 26, 34.

**{19}** In reviewing whether a comment was invited by a party, we begin "with the proposition that 'it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.'" *State v. Garcia*, 1994-NMCA-147, ¶ 12, 118 N.M. 773, 887 P.2d 767 (quoting *Doyle v. Ohio*, 426 U.S. 610, 618). However, "the prosecution may refer to the defendant's failure to testify if the door is opened by the defense." *State v. Henry*, 1984-NMSC-023, ¶ 6, 101 N.M. 266, 681 P.2d 51. "[W]e are least likely to find error where the defense has opened the door to the prosecutor's comments by its own argument or reference to facts not in evidence." *Sosa*, 2009-NMSC-056, ¶ 33 (internal quotation marks and citation omitted).

**{20}** The "invited-response doctrine" arises in contexts in which the defense promises either (1) to produce some form of evidence and then fails to present it, or (2) offers to produce a witness that ultimately never takes the stand. *Henry*, 1984-NMSC-023, ¶ 11 (holding defense counsel opened the door to the prosecutor's comment on the defendant's failure to testify where, in opening statement, counsel informed the jury that the defendant would testify and discussed certain facts his testimony would establish, but the defendant did not take the stand); *State v. Smith*, 2001-NMSC-004, ¶ 37, 130 N.M. 117, 19 P.3d 254 (concluding that the prosecutor's comment on silence was invited because the defendant did not testify, and no evidence was introduced in support of defense counsel's assertion); *Lockett v. Ohio*, 438 U.S. 586, 595 (1978) (holding defense counsel invited the prosecutor's remarks "first, by outlining [the] contemplated defense in his opening statement and, second, by stating to the court and

jury near the close of the case, that [the defendant] would be the 'next witness'"). Said another way, comments are invited when defense counsel states certain evidence or testimony will be introduced, and it is not.

{21}    The Court of Appeals concluded that the prosecutor's comments were invited because defense counsel repeatedly questioned Miller on cross-examination about whether he questioned Defendant about consuming alcohol after parking his vehicle. *Kennedy*, A-1-CA-36091, mem. op. ¶ 25. However, the defense is entitled to "examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt." *State v. Ware*, 1994-NMSC-091, ¶ 26, 118 N.M. 319, 881 P.2d 679. "The State is, after all, still charged with proving its case beyond a reasonable doubt," *id.*, and requiring this proof is in no way an invitation to comment on Defendant's silence. Notwithstanding that the cross-examination of Miller was not improper, we conclude the prosecutor's comments were invited for a different reason.

{22}    In his opening statement defense counsel informed the jury that when Miller asked Defendant if he had been drinking, Defendant "said yes, he had earlier, but *he didn't tell him about what he'd just consumed* at . . . Chavez's house *because* he wasn't driving at that time." There is only one person who knows *why* Defendant did not tell Miller "about what he'd just consumed," and that is Defendant himself. In addition, although Chavez testified that Defendant had drinks at his house, he did not provide any testimony supporting the other claim made by defense counsel in his opening statement that Defendant was not under the influence when he was driving, and that he was only under the influence *after* he was driving. Defense counsel promised to produce evidence—why Defendant did not tell Miller what he had consumed at Chavez's house, and that Defendant was not under the influence of alcohol when he was driving—and then defense counsel failed to produce said evidence. Defense counsel implicitly, if not explicitly, represented that Defendant would testify to these facts and then Defendant never took the stand. It was this argument made by defense counsel that invited the prosecutor's comments. "[I]t is clear that the prosecutor was responding to defense counsel's claim during opening argument and was thus commenting on what Defendant had already invited." *Smith*, 2001-NMSC-004, ¶ 40.

## III.    CONCLUSION

{23}    While we partially disagree with the reasoning of the Court of Appeals, we agree with its ultimate conclusion and therefore affirm.

{24}    **IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Chief Justice**

**WE CONCUR:**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**JUDITH K. NAKAMURA, Justice, Retired,
Sitting by Designation**